## Case No. 407.

### The ANN ARBOR.

[N. Y. Times, Dec. 21, 1854.]

District Court, S. D. New York. Dec. 20, 1854.[1]

ADMIRALTY—JURISDICTION—CANAL BOAT—CONTRACT OF CARRIAGE.

[An action in rem against a canal boat for a breach of contract of carriage from Rome to New York via the Erie canal and Hudson river, is not within the jurisdiction of a court of admiralty.]

[Cited in The E. M. McChesney, Cases Nos. 4,463, 4,464.]

[See note at end of case.]

[In admiralty. Libel in rem by Giles Hawley against the canal-boat Ann Arbor for breach of a contract of carriage. Dismissed. Affirmed by the circuit court. Case No. 408.]

Mr. Tracy, for libelant.
Kirkland & Birdseye, for claimants.

Before INGERSOLL, District Judge.

The libel in this case is filed to recover the value of a quantity of butter shipped on the 5th or 6th of Dec., 1852, on board of the canal boat then lying in the Erie canal at Rome, Oneida county, to be carried to the city of New York, and there delivered. It is alleged that 449 tubs of butter were shipped, and only 427 delivered, and that the canal boat is responsible in admiralty for the loss. The claimants deny that more than 427 were shipped, or that the boat is liable in admiralty if they were lost. The evidence was given by one witness that he kept the tally of the tubs as they were shipped or had it kept; that 449 tubs of butter went on board; that the weight was marked on each tub, and that the weight of all was 50,552 pounds. Evidence was given, however, that some butter was put on board when he was not present, and one of the libelants, in obtaining a clearance at the collector's office at Rome, represented the weight to be 46,594 pounds. The captain of the boat, his wife and son, who came with the boat to New York, all testified that it did not appear to have been disturbed on the voyage, and could not have been without their knowledge, and all that was carried to New York was safely delivered to the consignees.

Held BY THE COURT, that it is not shown by sufficient proof that these 22 tubs were ever put on board, but what was put on board was safely delivered. That it therefore was not necessary to decide the question of jurisdiction. but, without having sufficiently considered that question, the impressions of the court are against the right of the libelants to proceed against the boat. The canal boat was not built to navigate

---

[1] [Affirmed by circuit court in The Ann Arbor, Case No. 408.]

tide waters, but the Erie canal, and is not a ship within the definition in Benedict's Admiralty, 215, not being a locomotive machine. When a ship is libeled in admiralty court for the breach of maritime compact it is upon the ground that the ship itself contracts—and if such a canal boat as this, while on the Erie canal, up in Oneida county, can enter into and bind itself by a contract so as to come within the control of a court of admiralty, I do not see but that any vessel or thing capable of containing freight, built and designed to make headway on the New York Central Rail Road by means of the wheels of the rail road cars, can in the same county enter into and bind itself by a maritime contract and come under the control of a court of admiralty, provided it is so constructed that when it arrives at Albany it can be launched from the wheels of the railroad carriage into tide water and be towed by a steamboat to New York.

Libel dismissed, with costs.

[NOTE. This decision was affirmed by the circuit court. Case No. 408. It will be noticed that the remarks of the learned judge in this case on the question of jurisdiction are obiter dicta, as he distinctly says, and seem open to objection on several grounds. The reference to tide waters as determining the admiralty jurisdiction was doubtless an inadvertence, for ever since the decision in the case of The Genesee Chief. 12 How. (53 U. S.) 457, it has been uniformly held that the admiralty jurisdiction extends to all public navigable waters, whether subject to tides or not. In the principal case, however, the only natural public waterway (the Hudson) was tide water. Aside from this, the objection to the jurisdiction arises under three questions: (1) Is the Erie canal, in connection with the Hudson river, a public navigable water of the United States? (2) Is a canal boat having no locomotive power in itself a vessel subject to admiralty process in rem for breach of a contract of carriage? (3) Is a contract of carriage entered into with the owner of such a boat in an interior county of New York for the transportation of cargo, via Erie canal and Hudson river to New York city, a maritime contract?

[1. The first question must be answered in the affirmative, unless the artificial nature of the waterway is fatal to the jurisdiction, for the test is said to be whether the water is such that on it commerce can be carried on between different states or nations. The Genesee Chief. supra; The Daniel Ball, 10 Wall. (77 U. S.) 557. In the case of The Montello, 11 Wall. (78 U. S.) 411, it was held that the Fox river. in Wisconsin, was navigable water of the United States, within the meaning of the act of congress regulating the licensing of coasting vessels. It appeared that there had been a considerable interstate commerce on the river in its natural state in boats of draft towed by animal power, but several short portages were necessary. The acceptance of the ordinance of 1787 had been imposed on the state, as a condition of admission to the Union, and that ordinance provided that all navigable rivers leading into the Mississippi and the St. Lawrence and their portages should be public highways. The court held that capacity of the waters for use in their natural state for the purposes of commerce is the test of navigability, rather than the extent and manner of that use. The river had been improved by canals and locks, and steamboats plying on it were held

subject to the license act. Objection to the jurisdiction had been taken below and overruled. In the case of Ex parte Boyer, 109 U. S. 629, 3 Sup. Ct. 434. the admiralty jurisdiction was held to extend to a case of collision in the Illinois and Lake Michigan canal, though it was wholly artificial and wholly within the body of the state, and subject to its control. The canal had been built by the state with the aid of a land grant from congress, declaring that it should be public highway free of toll for the government of the United States, and for their property and persons in their service; and this on the ground that the canal was in fact a highway for commerce, so that vessels could pass on it from ports in one state to those in another.

[2. It seems well settled that the character of the thing injured by a maritime tort is immaterial. The jurisdiction depends wholly on the navigability of the waters where the injury occurs. The Ceres. Case No. 2,555; Albany Dredging Co. v. The Gladiolus. Case No. 132; Waring v. Clarke, 5 How. (46 U. S.) 441. In cases of contract the admiralty jurisdiction depends wholly on the subject-matter, whether maritime or not, and not on the locality. Waring v. Clarke, supra. In The E. M. McChesney, Case No. 4,463, Blatchford, District Judge, held that a canal boat having no motive power of its own was liable in rem for a breach of a contract for the carriage of grain from Buffalo to New York by way of the Erie canal. This decision was affirmed by Waite, Circuit Justice, in Case No. 4,464. The contract was made while the boat lay in Buffalo creek, and purported to be a bill of lading. The court held that, since part of the voyage was on the Hudson river. the contract was maritime. In The Hezekiah Baldwin, Case No. 6,449, a canal boat, without motive power of its own, and fitted as a floating elevator. was held subject to a maritime lien. In The General Cass. Case No. 5,307, Longyear, District Judge, held that lighters without motive power were subject to a maritime lien for towage rendered in the home port. Towage of a steam dredge and her scows is a maritime service for which a lien attaches. The Alabama, 22 Fed. 449. A maritime lien for supplies can be enforced against a steam dredge having no power of locomotion in itself. The Pioneer, 30 Fed. 206. A contract for the repair of a pleasure barge without motive power of its own is maritime. and a lien given by state statutes for such repairs in the home port is enforceable in admiralty. The City of Pittsburgh, 45 Fed. 699.

[3. On the authority of Ex parte Boyer, Waring v. Clarke, and The E. M. McChesney, supra, it would seem that a contract of carriage by a canal boat from some point on the Erie canal to New York city was a maritime contract, of which admiralty has jurisdiction.]